**In re Bruce KORSTAD, Meredy Korstad, and Gre-Kor Construction, Inc., an Oregon corporation, Debtors.**

**Bankruptcy Nos. 680–06831, 680–06849.**

United States Bankruptcy Court,
D. Oregon.

Aug. 24, 1982.

Elizabeth Perris, Portland, Or., for trustee.

### MEMORANDUM OPINION

C.E. LUCKEY, Bankruptcy Judge.

This matter is before the Court on the application of the debtors' trustee in the Chapter 11 case to assume a land sale contract as purchaser of real property and a wrecking yard thereon, and to assign the contract in connection with a proposed sale thereof. Michael Chestnut as personal representative of the estate of the vendor, Lawrence Chestnut, deceased, has filed objections to the trustee's proposals.

In the application to assume and assign the contract, the trustee urges that the curing of default required by Section 365(b) of the Bankruptcy Code obligates the debtor only to bring to date unpaid contract monthly payments, which the debtor urges should be offset by the amount of real property taxes due because of the contract's provision under which the vendor was to pay the taxes and add the amount to the contract balance. The debtors' trustee acknowledges the additional obligation to compensate the vendor for actual pecuniary loss consisting of expenses incurred by the vendor in a state court foreclosure action, and although the contract arrearages total a represented $8,907.50, the trustee of the debtors proposes to pay the objector only $6,000.00 within 10 days of an order authorizing the assumption and assignment, with the balance of that amount (after the tax offset) payable by the proposed assignees of the contract at any time before August 1, 1983, such balance to bear interest at 12% and evidenced by a promissory note from the assignees providing that failure to pay such sum when due will constitute a breach of the contract between the contract vendor, Chestnut, and the trustee's assignees.

The Chapter 11 case was filed July 25, 1980. On July 10, 1980, Chestnut had filed his state court action to foreclose against the debtors and others, alleging failure to pay two contract installments, and other contract breaches by the debtors.

The ownership of the property has a tangled history. November 19, 1969 Lawrence Chestnut sold the property to one Canter for a stated contract price of $40,000.00. Chestnut also thereafter loaned unsecured sums to Canter to operate the wrecking yard, in the approximate amount of $9,700.00. In January, 1977, Canter and Chestnut restructured the contract on the property to provide a new sale price of $48,000.00 which included the existing contract balance and Canter's unsecured indebtedness to Chestnut. Chestnut and Canter then by a consent and assignment document dated April 12, 1977, assigned their interests to the debtors, which assignment was recorded April 13, 1977.

The trustee in the Chapter 11 proceedings was appointed May 7, 1981.

Chestnut in August of 1981 moved the Court for an order requiring the trustee to accept or reject the land sale contract, which the trustee resisted, and the hearing was adjourned upon request of the parties to permit negotiation on the issue.

In June of 1982, the positions of the parties changed with Chestnut now resisting the trustee's application to assume the contract. The memoranda of the parties, however, focus the issue not on the right to accept or reject the contract, but rather on the amount required under Section 365 of the Bankruptcy Code to cure the default.

Although the trustee was appointed in May of 1981, no plan has been submitted. The debtor had multiple real property interests and tangled encumbrances. The trustee has attempted by piecemeal treatment of the interests to reduce the number of entities to be dealt with under a constantly postponed proposed plan.

■ The contract was in default before the filing of the Chapter 11. Under Oregon law the filing of the complaint for foreclosure served to accelerate the balance due. See *Kincaid v. Fitzwater,* 275 Or. 170 (1970); *Lorenzen v. Jackson,* 284 Or. 251, 586 P.2d 341 (1978).

■ These Oregon cases might be inapplicable if overriden by the provisions of the Bankruptcy Code, but such overriding would necessarily be done in the context of a plan of reorganization, to support a right to reversal of acceleration. A reading of the cases shows some liberality of the de-acceleration in Chapter 13 cases applying Section 1322(b) of the Bankruptcy Code when a plan has been filed. Application of those cases to Chapter 11 cases is inappropriate.

Section 365(a) of the Bankruptcy Code permits acceptance or rejection of contracts. The right, however, is limited by Section 365(b)(1) that requires action which cures or provides adequate assurance of prompt cure of the default. The default in this case under Oregon law entitles Chestnut to a

curing of the total contract balance, unless there be a reversal of acceleration pursuant to the provisions of the Bankruptcy Code's Section 1124(2). See *In re Hewitt*, 16 B.R. 973 (Bkrtcy.D.Alaska 1982).

Trustee's motion proposes [there is no copy of the proposed assignment if assumption be allowed in the file] only a partial curing of arrearages in default, with a balance to be paid by the intended assignees by August, 1983. The Court concludes that this does not meet the requirements of the Code, certainly in the context of facts in which no plan of reorganization has been submitted.

However, Section 1124(2) of the Code allows for curing of a default other than a kind specified in Section 365(b)(2) (not applicable herein) that occurred before or after the commencement of the case in circumstances in which a plan has been filed.

Therefore, the assumption of the contract is ordered denied unless within 60 days of this memorandum opinion the trustee cures the default by payment of the accelerated amount and compensation for actual pecuniary loss resulting from the default, or submits a plan of reorganization meeting the requirements of Section 1124(2) of the Code relating to Chestnut's interest.

Compensation for actual pecuniary loss shall include costs of foreclosure report $229.00, filing and service fees $65.00, interest at the rate of 12% on the contract arrearages, together with attorney fees in an amount not to exceed $1,225.00 but with amount of reasonable attorney fees subject to the Court's determination upon application.

Consideration of the application to assign the contract need not be reached unless and until the conditions of assumption be met. It is noted, however, that the proposed assignment includes payment of only $10,-000.00 cash on a $275,000.00 sale, with the buyers proposing to assume the $52,000.00 balance of the Chestnut contract, which has many years to run if it be subject to reverse acceleration, and second, third and fourth purchase money mortgages which would give questionable or no right to deficiency judgment in event of default, and give rise to undefined tax consequences in the bargain.

This Opinion contains the Court's Findings of Fact and Conclusions of Law and pursuant to Bankruptcy Rule 752 they will not be separately stated. Separate Order consistent herewith will be entered.